WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marvin D. Brody,<br><br>    Appellant,<br><br>v.<br><br>Geared Equity, LLC, et al.,<br><br>    Appellees. | Lead No. CV-13-02090-PHX-NVW<br><br>Consolidated with: |
| Marvin D. Brody,<br><br>    Appellant,<br><br>v.<br><br>Geared Equity, LLC, et al.,<br><br>    Appellees. | No. CV-13-02591-PHX-NVW<br><br>**ORDER** |

  These consolidated appeals arise out of Chapter 11 bankruptcy proceedings of Debtor/Appellant Marvin D. Brody. Appellee Geared Equity, LLC is a secured creditor. The amount in play in these appeals is about $200,000 in default interest. This is a surplus estate bankruptcy.

**I.  The Transaction and Initial Proceedings**

  Brody borrowed $1.0 million, due in six months, from Geared Equity secured by a second lien behind a $2.6 million first lien on a house in Coronado, California. Two months later he borrowed another $300,000, also due four months thereafter. The loans

were for improvements to the house, to be resold to repay the loans and return Brody's investment and a hoped-for profit. The notes called for 18% annual interest and 30% default interest. Brody invested another $150,000 in improving the house. All the loans were over-secured, whether the house's value was $8.0+ million, as Brody contends, or the $6.6 million at which it later sold.

Brody did not complete the improvements or resell the house in time, and the loans went into default on September 5, 2012. Brody asked Geared Equity to delay foreclosure while he continued marketing the property, as a pending foreclosure or consequent bankruptcy proceeding would depress the market value of the house. He opened up his construction and marketing activities to Geared Equity. The lender delayed four more months before commencing a deed of trust sale on January 18, 2013. Brody filed chapter 11 bankruptcy proceedings on February 11, 2013, to stop the trustee's sale two days later.

On May 13, 2013, Brody filed and sought approval of a plan of reorganization and disclosure statement that would cure the defaults upon a sale of the house, with post-default interest at the 18% contract rate, not the 30% default rate (Bk. Doc. 65). Geared Equity moved on July 26, 2013, to lift the stay to proceed with the trustee's sale (Bk. Doc. 74), and four days later Brody moved to approve a pending $6.6 million sale by August 16, 2013, and for accelerated approval of the plan and disclosure statement (Bk. Docs. 81, 79). The motions were expedited to an August 9, 2013 hearing.

**II.    Agreements of the Parties at the August 9, 2013 Hearing and the Appeals**

Brody sought accelerated approval of the pending sale and of the proposed plan and disclosure statement, rather than a sale under 11 U.S.C. § 363 outside the plan. He did so to take advantage of the rule that a cure of a default in the plan freed the debtor of the higher default interest rate and left the creditor unimpaired and therefore not entitled to vote on the plan. *See In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1341–42 (9th Cir. 1988). But if the sale was under 11 U.S.C. § 363 before and outside the confirmed plan, the post-default interest would not be limited to the contract rate and the

- 2 -

default rate would have to be paid to render Geared Equity unimpaired. *See Gen. Elec. Capital Corp. v. Future Media Prods. Inc.*, 536 F.3d 969, 973, *amended*, 547 F.3d 956 (9th Cir. 2008).

Geared Equity disputed that a cure even under an approved plan would suffice without default interest. It was undisputed that Brody would have to sell under a confirmed plan to have any chance to avoid the default interest rate. But closing the proposed August 16, 2013 sale for $6.6 million would benefit both sides. Geared Equity would get its principal, contract interest, and attorney's fees without further delay or contingency. Brody would get some return, though not all he hoped for. The need for and risks from threatened foreclosure would be gone. Therefore, the parties agreed at the August 9, 2013 hearing to let the August 16, 2013 sale proceed, leaving Brody in the same position he would be if the sale were under a confirmed plan. Geared Equity so agreed in clear terms:

> What I propose we do today is enter the 363 sale order with an understanding, and your Court can rule that it is without prejudice to any of these arguments, meaning that if we go down the road, you know, some ways and then we confirm the plan, that we will agree that the time delay -- the temporal delay between the 363 sale and when you consider the plan down the road **won't have any effect on their *Entz-White* arguments**. We're fine with that. Because that just preserves the status quo, versus having a confirmation order entered. So that would be our suggestion.
>
> . . . .
>
> And I've conferred with my client. And I'm perfectly willing to represent on the record, and you can **-- you can reflect it in the minute entry**, however you want to do it, that any plan confirmation order that may be entered down the road when we take up these issues, and in the meantime try to find a way to get it resolved, would be without prejudice to their *Entz-White* argument; meaning that the fact that the 363 closed and then there's **this temporal gap doesn't foreclose their *Entz-White* arguments**. I would be fine with that.

Appellant's Excerpts of Record at 319–21 (emphasis added). Geared Equity did not want delay in the sale or think it needed an extra obstacle to Brody's strategy to avoid the default interest rate. Geared Equity had the courage of its convictions.

- 3 -

However, when submitting a proposed form of order to the Bankruptcy Court, Geared Equity attempted to renounce its agreement and waiver previously made in open court. On August 16, 2013, the Bankruptcy Court entered an order rejecting Brody's position on the merits, relying on Congress's 1994 amendment to 11 U.S.C. § 1123(d) (Bk. Doc. 116). The Bankruptcy Court therefore denied confirmation of Brody's plan as written without default interest to cure the Geared Equity loans. On December 10, 2013, this Court granted Brody's motion for interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3) (Doc. 17).

By order of November 21, 2013, the Bankruptcy Court denied Brody's objection to Geared Equity's claim, upholding the 30% default interest rate as the August 16, 2013 order had, and finding the interest not a penalty (Bk. Doc. 207). Brody appealed that order on December 4, 2013 (Bk. Doc. 213). The briefing on the second appeal concluded on April 17, 2014, and the two appeals were consolidated on May 19, 2014 (Doc. 25). The money has been set aside pending the outcome of these appeals.

### III.  *Entz-White* Remains Good Law and the Law in the Ninth Circuit

The rule of *Entz-White*, 850 F.2d 1338, is that an otherwise full cure of a debtor's default does not require payment of post-default interest at the higher default rate. The Ninth Circuit so held based on persuasive case authority from analogous situations and without an explicit statutory definition of cure.

Geared Equity presents two arguments to escape this rule. First is that the qualification of *Future Media*, 536 F.3d 969, governs here because the August 16, 2013 sale was done before and outside a confirmed plan. This argument is foreclosed by Geared Equity's express agreement and waiver at the August 9, 2013 hearing that the sale may go ahead "without prejudice to their *Entz-White* argument; meaning that the fact that the 363 closed and then there's this temporal gap doesn't foreclose their *Entz-White* arguments." Geared Equity was "fine with that" and "that would be our suggestion." They made other statements to the same effect. Geared Equity's attempt a few days later

and again in these appeals to retreat from its agreement and waiver is ineffective. That argument fails.

Geared Equity's other argument is that Congress overturned the rule in *Entz-White* when it amended 11 U.S.C. § 1123(d) in 1994. Lower courts have divided on this question. The ruling in this case parts with the interpretation of both the bankruptcy judges in this District who addressed this before. *In re Phoenix Bus. Park Ltd. P'ship*, 257 B.R. 517, 519–23 (Bankr. D. Ariz. 2001) (Case, J.); *In re DSBC Investments, L.L.C.*, No. 4:09-BK-03146, 2009 WL 2998940, at *2 (Bankr. D. Ariz. Sept. 11, 2009) (Marlar, J.) ("This court does not need to re-invent the wheel, nor could it write more eloquently than Judges Morgan and Case, in reaching the same conclusion."); *accord In re Zamani*, 390 B.R. 680, 685–87 (Bankr. N.D. Cal. 2008) (Morgan, J.)   Those judges have rejected that interpretation of the 1994 amendment of 11 U.S.C. § 1123(d).

Rather than repeat at length what Judge Case has already said so well, this Court adopts his opinion in *In re Phoenix Bus. Park Ltd. P'ship*. *Entz-White* remains the law of the circuit, binding on this Court. Even as *res nova*, this Court finds it good law now, as it was then. The 1994 amendment of 11 U.S.C. § 1123(d) does not sustain the orders on appeal.

If the 1994 amendment of 11 U.S.C. § 1123(d) touches on the *Entz-White* rule at all, it more plausibly codifies that rule than repeals it, as Professor Klee concluded long ago. Kenneth N. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 Am. Bankr. L. J. 551, 558 (Fall 1995). Judge Collins's concern that Brody should have to pay the odious 30% default interest rate because he agreed to it and the estate has a surplus would fit this transaction if it had not gone into bankruptcy. If Geared Equity had taken the gamble of working with Brody to a sale without a foreclosure, its right to the 30% post-default interest rate would have been secure. But bankruptcy is in the background of every commercial agreement, and there can be no reliance on a term that bankruptcy law defeats. One can only hope and work to keep it out of bankruptcy. Geared Equity chose

Case 2:13-cv-02591-NVW   Document 33   Filed 08/06/14   Page 6 of 6

its advantages when it attempted to enrich itself with a multi-million dollar forfeiture of the equity in the house and thus forced Brody into bankruptcy.

Because the November 21, 2013 order in the second appeal was predicated on the August 16, 2013 order in the first appeal, the November 21, 2013 order too is in error and must be reversed.

IT IS THEREFORE ORDERED that the Clerk enter judgment reversing the orders of the Bankruptcy Court entered August 16 and November 21, 2013 (Bk. Docs. 116, 207) and remanding this case to the Bankruptcy Court for further proceedings consistent with this order.  The Clerk shall terminate these appeals.

Dated this 6th day of August, 2014.

_____
Neil V. Wake
United States District Judge

- 6 -